The final case of the day is Werner v. Auto-Owners Insurance, Appeal No. 21-3116, and we'll hear from David Hall on behalf of William Werner. Mr. Werner's home was destroyed by fire while a foreclosure case was pending after the sheriff's sale had taken place prior to judicial confirmation of the sale. After Mr. Werner's house burned, the insurer denied coverage, asserting that Mr. Werner had no insurable interest in the property because he did not have a redemption period remaining, and that was the only reason for the denial of the claim. The district court granted summary judgment to Mr. Werner on the issue of liability, but instead of awarding Mr. Werner the policy coverage for the loss sustained, instead, the district court continued to say that it felt that it had to determine what the Illinois Supreme Court would decide, which was actually something that the insurer or neither party had asked the district court to do. Well, that is actually the district court's job in a diversity jurisdiction case. Right. If that was where I take issue with what they did, it was our position that once it was found that Mr. Werner had an insurable interest, he should have been awarded policy coverage. There was no need for the further inquiry where the district court adopted a methodology that severely limited Mr. Werner's recovery to only the occupancy value of the property. Right. Mr. Hall, I need to ask you a series of questions, and I want to try to understand this problem a little more broadly, because I've got to say, whichever side prevails in this case, it's going to look like a windfall, at least to me, unless there's something I don't understand yet about the case. Okay. Did Nation Star recover anything from the insurer in this case? They did not. Any particular reason why, if you know? Yes, they basically never pursued a recovery. They, and it is in the record that, in the deposition of Monty Hall, they never contacted and they never pursued a recovery, and I don't know why other than that they were very difficult to communicate with. Okay. Did the buyer of the property at the judicial sale, who bid in the, whatever it was, I've forgotten how much money, $23,000, the 3J entity, did they insure the property, and did they recover anything from any insurance policy, as far as you know? To my knowledge, they did not insure the property or recover anything. In the purchase agreement with Triple J, whereby Mr. Werner basically reacquired a property, there was an assignment of any insurance proceeds back to Mr. Werner, but there was no recovery made. As far as you know, the 3J, if you're right, if, sorry, wait a minute, if the insurance company is right, then somebody who places a bid at a judicial sale needs to be putting insurance on the property at the time of the auction, right? Correct. Because it's an irrevocable offer and if the building burns down the day after the auction, they're still obligated to close, right? Correct. In that case, I would assume that the buyer might, you know, could ask that the sale not be confirmed if it was no longer equitable, but the case law does say that... I don't know why that wouldn't be equitable if they've taken the risk. Right. And if the previous owner is not entitled to any insurance receipts or to more than just the limited value of possession for a couple of months. Correct. Can you tell us, NationStar seems to have bid much less than the debt that Mr. Werner owed. If I remember correctly, I don't think NationStar even... lower than the Triple J Property Brothers, but they did not... That would be very odd. They did not, as normally happens, they did not bid the amount of the debt. Yeah. And I can't explain why they did not. And why was there no deficiency judgment against Mr. Werner? They did not pursue a deficiency judgment. And again, we had, in the foreclosure action, we had objected to confirmation because we had argued that they calculated the interest accrual and the payments to get to the deficiency, but they ended up just, it was crossed out of the judgment, so there was no deficiency taken. Okay. I appreciate your patience with me as well as my colleagues' patience with me, but where I'm headed with all this is if your position is correct, and I don't want to make any accusations against your client, but if your position is correct, then the routine processing of mortgage foreclosures in Illinois would create an enormous incentive for arson between the time of a judicial sale and confirmation of that sale. I suppose so, and actually that was one argument that the insurer made in the district court to say that the district court should find there was no insurable interest because of that incentive, but our response there was that obviously arson and insurance fraud are still going to be crimes, and if somebody was inclined to commit a felony in order to recover their property, they could certainly and probably would do it prior to the time that the property got to the point of the sheriff's sale. But I recognize that point. Well, and it's not a great value, but doesn't Mr. Ferner still owe J&J or JJ or Triple J for debris removal costs? I mean, it's certainly a small share of what he would recover if he were to win, but he paid about $15,000 for that service. Correct, for basically debris removal, which we'd argue is something. I have a second question while we're asking clarification. The district court didn't make any findings about the full value of the property, right? Is there a dispute between the parties about the full value of the property? No. The estimate, Mr. Werner obtained an estimate and the insurer obtained an estimate for repair and replacement, and they were actually fairly close. The insurer's was actually, I think, a couple thousand dollars higher, but they both exceeded the policy limit of $174,000, so that's what we argued that the district court should have awarded, and then there were a couple of other coverages added, another $8,000 or so to that is what we argued should have been awarded by the district court. When did Mr. Werner pay for, I was confused on the facts, when did he pay for debris removal? At the time that the repurchase from Triple J was completed, that payment was included, it was broken out as a separate amount, but it was included and paid at that closing when Triple J basically waited and recorded their judicial deed at the same time that they recorded the deed back to Mr. Werner. Okay, so Triple J bought the property, and then Mr. Werner bought it back from them, and when he bought it back from them, that's when he paid for debris removal. Right, that was all negotiated within the same agreement, because it was done prior to that, but that was a separate item. I'm nearly out of time, I'm going to reserve a little bit of time for rebuttal. You may, sure. Thank you very much Mr. Hall, and then for auto owners insurance, Mr. Drinkwine. Thank you. May it please the court, and good morning counsel, Chris Drinkwine on behalf of auto owners insurance company. A person has an insurable interest in property when he would profit something by its continued existence and lose something by its destruction. Insurable interest must be determined at the moment of loss, and not by speculating about future uncertain events. In the context of a mortgage foreclosure, the mortgager's insurable interest in the full value of the property ends when the mortgager loses the ability to redeem the mortgage by paying the bank in full, and he can no longer retain his title. This was the rule in trustees of schools and other early Illinois Supreme Court cases. The trustees of school rule carries out the purpose of insurance, which is to indemnify the insured in the event of a loss by putting him back in the same position he was in before the loss, and by not providing a windfall. So who had the insurable interest in this property at the time of the fire? Mr. Warner had an insurable interest in his property at the time of the fire, but only limited to the temporary occupancy. And who else? Well, the mortgagee, I suppose. Nation Stars, I thought that the foreclosure eliminated its debt, right? That's right. The judgment of foreclosure would have... So not the mortgagee. How about the buyer? Well, I think that's right, and the point of that is that more than one person can have an insurable interest, and it doesn't have to be the title holder. In fact, a secured person, the judicial buyer, title is not the determinative factor of whether you have an insurable interest. Most of the time when you have title, you also have an insurable interest, but in the context of a mortgagor who's lost his ability to redeem his mortgage and retain his title, he does not... Why wouldn't the buyer... The buyer could potentially have an insurable interest, right? Agreed. I guess there would be a good reason for, in a case like this, the buyer would not insure the home. Because if the buyer was purchasing the home for $23,000, the land is presumably worth something, right? So if the home burned to the ground and the buyer ended up buying the land for $23,000, the buyer had made a reasonable decision that it's not worth insuring because even if it's totally destroyed, we still own the land and we could sell the residential land for more than $23,000, so there's no reason for us to insure the home. Agreed. But they could insure it if they wanted to. That would be up to them, Your Honor, and auto owners' concern, of course, is with its own insured and what ultimately the district court determined that it needed to pay him, which was correctly determined to be the value of the temporary occupancy until 30 days after the confirmation of the judicial sale. And this was consistent with the limited insurable interest analysis that this court recognized in the Chicago Title and Trust case. So what do we do with the fact that, you know, confirmation of a sale is uncertain? Your Honor, you don't consider anything other than what existed on the date of the loss. It's a snapshot and you look at the circumstances that existed then and you don't speculate about future uncertainties. Like what would have happened at the confirmation of judicial sale. Okay. So, but we don't know. We don't know. Okay. So under your bid, we don't know whether the buyer's going to wind up with the property. We don't know if another sale may have to be held. Now, it is correct, isn't it, that the statute says if confirmation is denied, that the statutory and equitable rights of redemption are not reinstated. That's correct. Okay. Your Honor, what we do know, though, is on the date of the fire, Mr. Warner had already forfeited his right to redeem the mortgage by paying the bank in full. He let that period of redemption last. So as of that date, he had no ability to halt the foreclosure. He had no ability to do anything with his property. He lost all his rights to the property, essentially, except for his right to temporarily occupy it. Is that entirely correct? Because isn't Illinois law still that the title hasn't passed at that point? So he hasn't lost everything. The title has not passed, Your Honor. That is correct. But the trustees of school rule, as I've been referring to it, doesn't focus on the title. It focuses on whether the mortgagor, during the mortgage foreclosure proceeding, has forfeited his right to redeem the mortgage. At that point, under those cases, he no longer has an insurable interest in the full value of the property. And that trustees of school rule persists even after passage of the Illinois Mortgage Foreclosure Law of 1987, contrary to Mr. Warner's position. And on that point of the focus being on the redemption period as opposed to title, the other case, the other early case that Alder Warner cited, was the Stevens case. And in the Stevens case, which was another early Illinois Supreme Court case, the Illinois Supreme Court specifically said that its decision was exclusively based on one fact, and that was the party's agreement to extend the redemption period in that case. So when the insured mill burned during that extended redemption period in the Stevens case, the Illinois Supreme Court held that the mill owner had an insurable interest in the mill and did not focus on the title, but rather the extension of the redemption period. And it wrote, it is the settled law that a mortgagor may insure the full value of the property and recover the sum insured if he had a right of redemption at the time of the loss. If he didn't have a right of redemption at the time of the loss, he has no insurable interest in the full value of the property. So why shouldn't your policy have just terminated and stopped collecting premiums upon judicial sale? I suppose that he's, as it turns out, still has an insurable interest in the property. Your point is well taken. I suppose the premium doesn't correspond to the... Not remotely to the risk. Yeah. It actually probably is equivalent to the risk. But auto owners' insurance position, Your Honor, is that the policy incorporates Illinois' doctrine of insurable interest and with it the limited insurable interest doctrine that this court recognized in the Chicago Title and Trust case. The demolition cases give us another... perspective on the proper evaluation of insurable interest and focusing only on the circumstances that existed on the date of the loss. In the Lieberman case, the court held that the owner did not have an insurable interest, concluding that he had irrevocably abandoned the building to demolition because on the date of the loss, a portion of the roof had already been removed by the demolition contractor. In contrast, in the Murphy and Garci cases, the courts concluded that the owner did have an insurable interest because the owner had not irrevocably abandoned the building to demolition, even though they were both under contract to demolish the building. Mr. Dragoite, can I ask you a question? As far as the insurable interest, the district court found that he had an insurable interest at the time of the loss, and you didn't appeal that, right? That's correct. So we have that, it's just the value. It's just the value of the insurable interest at the time of the loss. That's the question for us, right? The question for you is whether the district court correctly determined that the value of the insurable interest was limited to Mr. Warner's temporary act. So the value at the time of the loss. That's right. And as far as I understand Mr. Warner's argument, he's arguing that the value is the complete and total loss of the property, the complete value of the property, because the completion of the confirmation had not occurred. So the completion of the judicial sale had not occurred. That's correct. So it's speculative. But it seems to me that we dealt with this nearly identical issue in Aurora Loan Services. The case, Your Honor? Aurora Loan Services. You cite it at one point in your brief, but in that case we talk about exactly what confirmation is. And we write, the purchaser at the sale has a presumptive right to eventual ownership of the property, a right contingent on the highly circumscribed authority of the state court to void the sale on any of the foregrounds set forth in the statute. And then we cite that in HSBC case, which is more recent, where we talk about the Illinois law and it doesn't seem to me to be such an unsettled question in our circuit as the parties present it. And maybe I'm just missing something. It's not unsettled at all. Those are mortgage foreclosure cases, I think. And there's no question that the title doesn't pass until after confirmation of sale. But what's important to recognize is that title's not the important inquiry when it comes to a mortgagor's insurable interest during the course of a mortgage foreclosure. We're focused on whether he retains the right to redeem the mortgage by paying the note, not whether he's entitled. Right, he can't do that. Everyone agrees that he can't. That time has come and gone. Right. And the cases you cite are certainly delineating when these rights expire and when title passes. But we have to focus on whether he had the right to redeem the mortgage on the date of the loss and he didn't. That's the salient issue under trustees of schools and the progeny. And the demolition cases are different, and the sale cases are different, and the condemnation cases are different. But the point is in those cases you don't look to some theoretical path to avoid foreclosure or some theoretical path to avoid condemnation or sale. You look at the insured's insurable interest on the date of the loss. I see that my time is up. For all these reasons and those stated in our brief, auto owners respectfully request that this court affirm the district court's judgment. Thank you, Mr. Drinkwine. Rebuttal, Mr. Hall. I'll get you as much as I can. We gave him a little extra time. You can have a little extra time, too. I appreciate that, Your Honor. In terms of whether the purchaser has an insurable interest, the Witten v. Cincinnati insurance case is a case where there was a contract to purchase and a fire destroyed a property before the purchase closed. In that case, it was not a foreclosure case, but the court did find that the purchaser had an insurable interest. But in that case, the bulk of the insurance proceeds were awarded to the bank, which was still the title holder, which would be analogous to where Mr. Werner was. This court in HSBC v. Townsend said that the foreclosure process is akin to a closing where the judicial confirmation is the closing event. So we think that that would also support awarding Mr. Werner the full value of the property. The... As far as looking at the date of the loss, that's exactly what we've asked the court to do. At the date of the loss, Mr. Werner was the title owner. And, you know, there's no way to say that he abandoned the property or that it was economically worthless to him without assuming confirmation of sale. You know, this court in the Chicago title case, where by the time that case got to the court, that property had been demolished. But even then, this court said, go back and look at what the status of the demolition was at the date of the loss. So even knowing that it had occurred, it was not assumed that it occurred. The Chicago title case obviously has a lot of very different facts that we've addressed in our brief, Mr. White. It's... The facts are very different from Mr. Werner's, but even in that case, the court sent it back to determine how much the insurer there had actually invested in the property in terms of a purchase price and repairs. The court was skeptical of what had been claimed, but did send it back for determination of those items. Um... The Stevens case, 1867 Illinois case, as counsel noted, the parties did extend the redemption period there for two years by agreement. And the household bank case that we've cited, Illinois Supreme Court case, there the Illinois Supreme Court said that there's nothing to prevent a mortgagee from, by grace, extending the redemption period. So all those, I mean, Stevens combined with that, I mean, basically mean that until there's judicial confirmation of the sale, redemption, while you may not have a statutory right, is not out of the question. So again, if you're gonna look at... at where things stood at the moment of the loss, Mr. Werner was still the owner of the... You can't assume the confirmation is going to occur. Do you agree, though, that if confirmation had been denied because of some problems in the auction, that redemption rights would not have been restored? Right. They're not restored, but they're, you know, you don't... Again, you would go back to the household bank, whether you could... Well, household... There's always the possibility of a voluntary arrangement, right? Correct. Or, you know, maybe you bid higher at the next auction or whatever it might be. So let me... Is NationStar the group that really made the big mistake here? By failing to bid its credit bid? You know, I don't represent them, so I can't comment on what... Okay. Why they did what they did in the case. All right. Thank you very much, Mr. Hall, Mr. Drinkwine. Our thanks to both counsel. Case will be taken under advisement, and the court will be in recess.